EILEEN M. DECKER
United States Attorney
DOROTHY A. SCHOUTEN
Assistant United States Attorney
Chief, Civil Division
KEITH M. STAUB (Cal. Bar No. 137909)
MARSHA M. YASUDA (Cal. Bar No. 238509)
Assistant United States Attorney
     Federal Building, Suite 7516
     300 North Los Angeles Street
     Los Angeles, California 90012
     Telephone: (213) 894-7423/6702
     Facsimile: (213) 894-7819
     E-mail: Keith.Staub@usdoj.gov
           Marsha.Yasuda@usdoj.gov

Attorneys for Defendant
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DENNESTY DAWKINS,<br><br>       Plaintiff,<br><br>       v.<br><br>EVELYN CASTRO-GREENSPAN, et al.,<br><br>       Defendants. | No. CV 14-07269 PA (RZx)<br><br>**UNITED STATES OF AMERICA'S PRETRIAL MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Hearing Date:  March 18, 2016<br>Hearing Time:  1:30 pm<br>Ctrm:         15<br><br>Honorable Percy Anderson |

Pursuant to Rule 16 of the Federal Rules of Civil Procedure, Local Rule 16-4 of the Rules of the Central District of California, and this Court's Order dated August 4, 2015, the United States of America hereby submits its Pre-Trial Memorandum of Contentions of Fact and Law:

## I.      INTRODUCTION

Plaintiff Dennesty Dawkins ("Plaintiff") was an inmate incarcerated at the Federal Bureau of Prisons ("BOP") Federal Correctional Institution ("FCI") Lompoc from February 14, 2011 to April 30, 2012 and at FCI Terminal Island from May 1, 2012 to May 5, 2015.  During this time, he complained of vision loss in his right eye.  By September 2012, Mr. Dawkins had lost light perception in his right eye.

While at FCI Lompoc, Plaintiff was treated by BOP employee Dr. Richard Gross. and was also treated by the following independent contractors who were not employed by the BOP: Dr. Charles Hammer (in-house optometrist) and Dr. Randall Goodman (off-site ophthalmologist).  While hat FCI Terminal Island, Plaintiff was treated by BOP employee Dr. Evelyn Castro-Greenspan and was also treated by independent contractors Dr. Stanley Carson (off-site ophthalmologist), Dr. Kenneth Miller (on-site ophthalmologist) and Dr. Julie Becker (off-site ophthalmologist).

Plaintiff was released from FCI Terminal Island and transferred to a halfway house in May 2015.  He was able to find employment on his own within 3 months of his transfer and without vocational rehabilitation assistance.  He has been employed continuously at a restaurant since his release from prison and is responsible for checking inventory, cleaning, cashiering, customer service, and closing the restaurant.  He currently resides in Bluespring, Missouri and earns about $2 over the State minimum wage.

## II.     CLAIMS AND DEFENSES

### A.      Summary Statement of Plaintiff's Claim

Plaintiff brings this medical negligence action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq.  Specifically, Plaintiff alleges that Defendant negligently treated his right eye cataract between March 2011 and September 2012, while imprisoned at FCI Lompoc and FCI Terminal Island, resulting in right eye blindness .

**B.    Elements Required to Establish Plaintiff's Claim.**

**The Federal Tort Claims Act ("FTCA")**

The FTCA waives the Government's sovereign immunity and confers subject matter jurisdiction on the federal district courts when federal employees are negligent under circumstances where the United States, if it were a private party, would be liable under the law of the place where the tortious act or omission occurred.  28 U.S.C § 1346(b).  Here, the allegedly tortious acts occurred in California.  Accordingly, in order to establish his claims against the United States, Plaintiff must state a claim under California law based on the non-discretionary acts or omissions of a BOP employee acting within the course and scope of his or her duties.

**Elements Required to Establish Plaintiff's Claim for Medical Negligence**

The elements a plaintiff must prove for a negligence action based on medical malpractice are:

1.    The duty of the professional to use such skill, prudence, and diligence as other members of his or her profession commonly possess and exercise;

2.    A breach of that duty;

3.    A proximate causal connection between the negligent conduct and the resulting injury; and

4.    Actual loss or damage resulting from the professional's negligence.

Johnson v. Superior Court, 143 Cal. App. 4th 297, 305 (2006); Hanson v. Grode, 76 Cal. App. 4th 601, 606 (1999).  Plaintiff must prove each element by the preponderance of the evidence.  Mgmt. Activities v. United States, 21 F. Supp. 2d 1157, 1174 (C.D. Cal. 1998).

"The standard of care in a medical malpractice case requires that medical service providers exercise… that degree of skill, knowledge and care ordinarily possessed and exercised by members of their profession under similar circumstances."  Barris v. County of Los Angeles, 20 Cal. 4th 101, 108 n.1 (1999).  Thus, a physician breaches the standard of care only if the physician action is "some deviation from the standard of care

that his peers consider appropriate in the situation." Burgess v. Superior Ct., 2 Cal. 4th 1064, 1081 (1992). A plaintiff must convince the trier of fact that the physician's peers would consider his or her act to be blameworthy to constitute a breach of the reasonable standard of care. See id.

As a general rule, the testimony of an expert witness is required in every professional negligence case to establish (i) the applicable standard of care, (ii) whether that standard was met or breached by defendant, and (iii) whether any negligence by defendant caused the plaintiff's damages. See Scott v. Rayhrer, 185 Cal. App. 4th 1535, 1542 (Cal. App. 2d Dist. 2010) (citing Flowers v. Torrance Memorial Hospital Medical Center, 8 Cal. 4th 992, 1001 (1994); see also Jones v. United States, 933 F. Supp. 894 900 (N.D. Cal. 1996) (citing Jones v. Ortho Pharmaceutical Corp., 163 Cal. App. 3d 396, 402-403 (1985)).

The burden of proof with respect to causation rests with the plaintiff. See Vasquez v. Residential Investments, Inc., 118 Cal. App. 4th 269, 288 (2004). The plaintiff must show both general and specific causation; general causation is a showing that the defendant's conduct increased the likelihood of injury, and specific causation is a showing that the defendant's conduct was the probable, not merely a possible, cause of the injury. Id.

Untoward consequences that occur as a result of a physician's error in judgment will not render that physician negligent absent a failure to meet the applicable standard of care. Wilson v. Ritto, 105 Cal. App. 4th 361, 369 (2003) (quoting Huffman v. Lindquist, 37 Cal. 2d 465, 475, (1951).

"The fact that another physician might have elected to treat the case differently or to use methods other than those employed by defendant does not of itself establish negligence." Baldonado v. United States, Case No. 2;06-cv-07266-JHN-RZx, 2011 U.S. Dist. LEXIS 80554, 7-8 (C.D. Cal. July 25, 2011) (citing Costa v. Regents of University of California, 116 Cal. App. 2d 445, 458, 254 P.2d 85 (1953)).

A physician is not liable for a result or occurrence that was caused "by the natural

course of a disease or condition, or was the natural or expected result of reasonable treatment rendered for the disease or condition."  Minneci v. Pollard, 132 S. Ct. 617, 624 (2012).

Negligence in a malpractice action is not to be determined by hindsight nor by what a party subsequently learns.  Scarano v. Schnoor, 158 Cal. App. 2d 612, 622, (1958); see also Cnty. of L.A. v. Superior Court, 224 Cal. App. 3d 1446, 1455, (1990).

**Elements Required to Establish Plaintiff's Claim for Future Medical Expenses**

To recover damages for future medical expenses, Plaintiff must prove by a preponderance of the evidence:

1. The reasonable value of each of the expected future medical expenses;
2. That the future medical care, services, and supplies are reasonably certain to be needed and given in treatment of the injury; and
3. That the condition requiring the future medical care is causally connected to the injuries inflicted by the United States.

CACI 3903A; Bellman v. S.F. Hihg Sch. Dist., 81 P2d 894, 900 (1938) ("To entitle a plaintiff to recover present damages for apprehended future consequences, there must be evidence to show such a degree of probability of their occurring as amounts to a reasonable certainty that they will result from the original injury.") (citation omitted); Scognamillo v. Herrick, 106 Cal. App. 4th 1139, 1151 (2003) (reversing award of damages that were "conjectural or not reasonably certain").

**Elements Required to Establish Plaintiff's Claim for Lost Earning Capacity**

"To recover damages for the loss of the ability to earn money as a result of the injury, Plaintiff must prove the reasonable value of that loss to him."  CACI 3903D.

**Elements Required to Establish Future Loss of Earnings**

To recover damages for future loss of earnings or earning capacity, Plaintiff must prove by a preponderance of the evidence:

1. The reasonable amount of the expected future income, earnings, salary, or wages;

4

2. That Plaintiff is reasonably certain to lose such future income, earnings, salary, or wages; and

3. That the future lost income, earnings, salary, or wages is causally connected to the injuries inflicted by the United States.

CACI No. 3903C.

### Elements Required to Establish Plaintiff's Claim for Pain and Suffering

There is no fixed standard to determine an amount to award a plaintiff for pain and suffering. However, any damages awarded for pain and suffering must be reasonable and based upon the evidence and the factfinder's common sense. CACI No. 3905A; Duarte v. Zachariah, 22 Cal. App. 4th 1652, 1664-1665 (1994) ("There is no direct correspondence between money and harm to the body, feelings or reputation… The discretion of the judge or jury determines the amount of recovery, the only standard being such an amount as a reasonable person would estimate as fair compensation"). In addition, any award of pain and suffering damages must be causally connected to the tortious act. Miller v. San Diego Gas & Electric Co., 212 Cal. App. 2d 555, 558 (1963).

**C.      Description of Key Evidence in Opposition to Each Claim.**

1. Medical Negligence

a. *No breach of the standard of care.*

Plaintiff cannot prove there was a breach of the standard of care. Defendant's ophthalmology expert, Dr. David J. Fuerst, will testify that there was no breach in the standard of care regarding Plaintiff's treatment of his right eye at FCI Lompoc and FCI Terminal Island. Dr. Fuerst will testify that Dr. Gross (at FCI Lompoc) and Dr. Castro-Greenspan (at FCI Terminal Island) complied with the standard of care by referring Plaintiff appropriately to eye specialists and by ordering the medical therapy as prescribed by these specialists.

b. *Plaintiff cannot establish causation.*

Even assuming Plaintiff could establish a breach of the standard of care, Plaintiff cannot prove the United States was the actual or proximate cause of Plaintiff's right eye

blindness.  Both Plaintiff's and Defendant's ophthalmology experts agree that the exact cause of Plaintiff's right eye blindness cannot be determined.  Accordingly, Plaintiff cannot prove the BOP's negligence caused his right eye blindness.  See Jennings v. Palomar Pomerado Health Sys., Inc., 114 Cal. App. 4th 1108, 1118 (2003) (requiring "competent expert testimony" to establish causation).

### 2.   Plaintiff's Alleged Damages

Assuming Plaintiff could successfully establish Defendant was medically negligent, Plaintiff's economic damages are minimal.  Plaintiff alleges future medical costs of $61,994, lost earnings and benefits of $296,441, and vocational rehabilitation costs of $17,043; however, he will not able to establish these amounts at trial.

### a.   Future Medical Costs

Plaintiff's future medical costs are, at most, $10,000. [1]  Although Plaintiff's economist, Robert A. Taylor, opines Plaintiff's future medical costs are $61,994, it is based solely on Plaintiff's deposition testimony that he needs to replace his right eye shell every 5 years at a cost of $10,000.  Plaintiff's ophthalmology expert, Dr. John Bokosky, however, testified at deposition that Plaintiff needs his right eye removed and replaced with a prosthesis.  According to Dr. Bokosky, this one-time procedure would cost $10,000.00.

### b.   Future Lost Earnings and Earning Capacity

Plaintiff's claim of future lost earning capacity is speculative, at best.  Plaintiff is currently employed and earning above the State of Missouri minimum wage in

---

[1] The Affordable Care Act ensures Plaintiff will have access to insurance covering his future medical care.  Pub.L. No. 111-148, 124 Stat. 119 (Mar. 23, 2010).  Cal. Civ. Code § 3333.1(a) applies to future benefits, meaning that evidence of future insurance benefits is admissible to limit plaintiff's recovery to out of pocket costs.  See Barme v. Wood, 37 Cal.3d 174 (1984); Fein v. Permanente Medical Group, 38 Cal.3d 137 (1985); see also Minute Order, Palacio v. United States, No. 13-cv-1012, ECF No. 97 (E.D. Cal. Apr. 16, 2015) ("[E]vidence of future collateral sources under MICRA is admissible. Evidence related to the Affordable Care Act is admissible as it pertains to the likelihood of Plaintiffs [sic] future insurance benefits.")

essentially the same occupation he held before he was incarcerated (i.e., food services). Plaintiff claims lost earning capacity because he alleges he was turned down for a maintenance job and commercial truck driving job due to his monocular blindness. Plaintiff's claims, however, are based on inadmissible, speculative hearsay statements that he was offered such jobs, he would have been paid more than he currently earns, and he was rejected solely due to his right eye blindness. Moreover, his claims of needing future vocational rehabilitation and job accommodations for his monocular blindness are belied by the fact that he obtained work on his own about 3 months after being released from prison and his current occupation requires no accommodations for his vision. Any accommodations required for future employment would be purely speculative.

### D. Summary Statement of Defendant's Affirmative Defenses

#### 1. First Affirmative Defense: Comparative Fault

If the Court finds any wrongful act, fault, carelessness, or negligence on the part of Defendant, any recovery or award or damages should be diminished in proportion to the amount of fault attributed to Plaintiff and/or to other third parties. Li v. Yellow Cab Co., 13 Cal.3d 804, 810, 119 Cal. Rptr. 858, 532, P2d 1226 (1975).

#### 2. Second Affirmative Defense: Statutory Cap on Non-Economic Damages

California law prohibits a non-economic damages award of more than $250,000 in an action for injury against a health care provider based on professional negligence. Cal. Civil Code § 3333.2(b).

#### 3. Third Affirmative Defense: FTCA Administrative Tort Claim Limitation

Plaintiff's damages, if any, are limited to the amount claimed administratively, under the Federal Tort Claims Act, 28 U.S.C. § 2675(b).

#### 4. Fourth Affirmative Defense: California Law Limitations

Plaintiff's claims for relief are limited by California Code California Civil Code §§ 3333.1 and California Code of Civil Procedure § 667.7.

7

E. **Elements of the United States' Claims and Defenses**

**Elements Required to Establish Defendant's First Affirmative Defense**

**for Comparative Fault**

1.      Plaintiff and/or a nonparty tortfeasor were at fault with regard to damages, if any, he sustained; and

2.      The fault of Plaintiff and/or a nonparty tortfeasor was a substantial factor in causing Plaintiff's damages, if any.

Any potential recovery by Plaintiff must be reduced in proportion to his own fault and the fault of others.  Li v. Yellow Cab Co., 13 Cal. 3d 804, 829 (1975).

Although the FTCA waives sovereign immunity for the medical negligence of federal employees acting within the scope of their employment, the FTCA expressly excludes coverage for "any contractor with the United States".  28 U.S.C. § 2671; Logue v United States, 412 U.S. 521 (1973).  Accordingly, the United States cannot be held liable for the medical negligence of independent contractors.

**Elements Required to Establish Defendant's Second Defense**

**For Statutory Cap on Non-Economic Damages**

Plaintiff may not recover more than $250,000 in non-economic damages.  Cal. Civil. Code § 3333.2(b); Hoffman v. United States, 767 F.2d 1431, 1433 (9th Cir. 1985).

**Elements Required to Establish Defendant's Third Affirmative Defense**

**For FTCA Administrative Tort Claims Limitations**

Under the FTCA, Plaintiff's damages, if any, are limited to the amount claimed administratively.  28 U.S.C. §2675(b).  Damage awards must be reasonable and certain so as not to be punitive.  See 28 U.S.C. § 2674 (punitive damages may not be assessed against the United States); Felder v. United States, 543 F.2d 657 (9th Cir. 1976).  To the extent Plaintiff seeks pre-judgment interest or any other monetary amounts not provided for by law, the Court lacks subject matter jurisdiction over such claims.  28 U.S.C. §§ 2674, 2678 and 2412(a)(1).

8

## Elements Required to Establish Defendant's Fourth Affirmative Defense
## For California Law Limitations

Under Section 3333.1(a) of the California Civil Code, medical malpractice defendants may introduce evidence of any amount payable as a benefit to the plaintiff as a result of the personal injury under any health, sickness or income-disability insurance, accident insurance that provides health benefits or income-disability coverage, and any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the cost of medical, hospital, dental, or other health care services.

California Code of Civil Procedure § 667.7 is a periodic-payment statute which allows a party in a medical malpractice action to elect that future damages "be paid in whole or in part by periodic payments rather than by a lump-sum payment if the award equals or exceeds fifty thousand dollars."

### F.    Evidence Defendant Relies on for Support of the Above Affirmative Defenses

Assuming Plaintiff could establish medical negligence, most, if not all, of the fault must be apportioned to the non-party tortfeasors (i.e., the independent contractor eye specialists who treated Plaintiff's right eye).  Plaintiff's expert, Dr. Bokosky, faults the care of the independent contractors in failing to treat Plaintiff's right eye more aggressively and failing to recommend urgent removal of the cataract as reasons for Plaintiff's right eye vision loss.

Dr. Bokosky stated in deposition that Dr. Charles Hammer (the in-house optometrist at FCI Lompoc) was not qualified to treat Plaintiff's vision problems and should have been more aggressive in getting Plaintiff's right eye cataract removed. Dr. Bokoksy also stated that Dr. Randall Goodman (the ophthalmologist who cared for Plaintiff while he was housed at FCI Lompoc) should have been more aggressive in treating Plaintiff's right eye inflammation and should have specifically recommended "urgent" cataract removal.  Dr. Bokosky also faulted Dr. Stanley Carson (the ophthalmologist Plaintiff visited when he was transferred to FCI Terminal Island) for

failing to indicate in his report that cataract removal was urgent.

In the present case, Dr. Hammer, Dr. Goodman and Dr. Carson were all independent contractors.  The BOP had no control or supervision over their day-to-day operations or performance.  Accordingly, any negligence on the parts of Dr. Hammer, Dr. Goodman or Dr. Carson should be apportioned accordingly.  <u>Ducey v United States</u>, 713 F.2d 504 (9th Cir. 1983).

### G.    Third Parties

There are no third parties in this action.

### H.    Evidentiary Issues

The United States anticipates evidentiary issues on the following matters: Defendant anticipates filing a motion in limine to limit the testimony of Plaintiff's ophthalmology expert, Dr. John E. Bokosky, to the extent he will testify to matters beyond the scope of his Rule 26 report and deposition testimony.

## III.    BIFUCATION OF ISSUES

The United States does not seek to bifurcate any issues.

## IV.    TRIAL

Plaintiff's action is to be tried to the Court pursuant to 28 U.S.C. § 2402.

## V.    ATTORNEYS' FEES

Attorney's fees in FTCA cases are limited to a maximum of 25 percent (25%) of any recovery.  28 U.S.C. § 2678.  Attorney's fees in FTCA cases are paid out of any judgment amount and not in addition thereto.

///

///

///

///

///

///

///

## VI.   ABANDONMENT OF ISSUES

The United States has not abandoned any issues.

Dated: March 4, 2016

Respectfully submitted,

EILEEN M. DECKER
United States Attorney
DOROTHY A. SCHOUTEN
Assistant United States Attorney
Chief, Civil Division


*/s/ Marsha M. Yasuda*
KEITH M. STAUB
MARSHA M. YASUDA
Assistant United States Attorney

Attorneys for Defendant