Eugene G. Iredale, SBN: 75292
Julia Yoo, SBN: 231163
Grace June, SBN: 287973
AIREDALE and YOO, APC
email: egiredale@yahoo.com
105 West F Street, 4th Floor
San Diego, CA 92101
TEL: (619) 233-1525

Richard M. Barnett, SBN: 65132
email: richardmbarnett@gmail.com
105 West F Street, 4th Floor
San Diego, CA 92101
TEL: (619) 231-1182

Attorneys for Plaintiff
DENNESTY DAWKINS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DENNESTY DAWKINS,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>EVELYN CASTRO GREENSPAN, M.D., AND DOES 1-50 INCLUSIVE,<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Defendants. | Case No. LA CV-14-7269-PA(RZx)<br><br>**PLAINTIFF DENNESTY DAWKIN'S PRETRIAL MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Hearing Date:　March 18, 2016<br>Time:　　　　1:30 p.m.<br>Ctrm:　　　　15<br><br>Honorable Percy Anderson |

Pursuant to Rule 16 of the Federal Rules of Civil Procedure, Local Rule 16-4 of the Rules of the Central District of California, and this Court's Order dated August 4, 2015, Plaintiff Dennesty Dawkins hereby submits his Pre-Trial Memorandum of Contentions of Fact and Law:

**I**

**Introduction**

Plaintiff Dennesty Dawkins ("Plaintiff") was an inmate incarcerated at the Federal Bureau of Prisons ("BOP") Federal Correctional Institution ("FCI") Lompoc

1  from February 14, 2011 to April 30, 2012 and at FCI Terminal Island from May 1,
2  2012 to May 5, 2015.  Beginning in March 2011, he began to lose vision in his right
3  eye.  Because Mr. Dawkins suffered from sarcoidosis, he developed uveitis, an
4  inflammation of the eye, and a cataract.
5      In January 2012, a BOP contract ophthalmologist recommended to the BOP
6  employee physician at FCI Lompoc that Mr. Dawkins undergo cataract surgery.
7  Dennesty Dawkins was given to understand that cataract surgery would take place,
8  but no surgery occurred.
9      In May 2012, Dennesty Dawkins was transferred to FCI Terminal Island,
10 where he was examined by Dr. Castro-Greenspan.  He told Dr. Castro-Greenspan he
11 could not see anything in his right eye, and could perceive only light through it.  A
12 second contract ophthalmologist in the Los Angeles area then again recommended
13 that he undergo cataract removal.  Dr. Castro-Greenspan and Bureau of Prisons
14 personnel failed to timely schedule cataract removal.  After another five months,
15 Dennesty Dawkins finally spoke with yet another contract ophthalmologist, who told
16 him he was now blind in his right eye.

## II

## Plaintiff Brings a Cause of Action for Professional
## Negligence Under the Federal Tort Claims Act

20     Plaintiff has brought this medical negligence action against the United States
21 under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq.
22 Plaintiff has alleged that Defendant negligently treated his right eye between March
23 11, 2011 and September, 2012, while he was in the custody of the Bureau of Prisons
24 at FCI Lompoc and FCI Terminal Island.
25     The FTCA waives the Government's sovereign immunity and confers subject
26 matter jurisdiction on the federal district courts when federal employees are negligent
27 under circumstances in which the United States, if it were a private party, would be
28 liable under the law of the state where the act or omission occurred.  28 U.S.C. §

1346(b). The United States is liable here if Mr. Dawkins proves a case of medical negligence against the Bureau of Prisons employees who were required to provide medical care that conformed to the standard of care applicable to medical professionals in the State of California.

## III

## Is the United States Liable for Professional Negligence by Its Employees?

Plaintiff will prove the elements of professional malpractice:

1. The duty of the professional(s) to use such skill, prudence, and diligence as other members of his or her profession commonly possess and exercise;
2. A breach of that duty;
3. A proximate causal connection between the negligent conduct and the resulting injury; and
4. Actual loss or damage resulting from the professionals' negligence.

The standard of care in a medical malpractice case requires that medical service providers exercise that degree of skill, knowledge and care ordinarily possessed and exercised by members of their profession under similar circumstances.

## III (A)

## Will Plaintiff Be Able to Demonstrate the Duty and Standard of Care Applicable to the Employees of Defendant United States?

Plaintiff will introduce the testimony of an expert witness, Dr. Bokosky, a board-certified ophthalmologist. He will testify to the standard of care expected of a medical provider in the circumstances of this case. Specifically, he will describe the obligations to provide timely surgery to remove the cataract, and the importance of monitoring and treatment of the inflamation of the eye (uvietis). Plaintiff will rely on the admissions of Dr. Castro-Greenspan, who conceded her obligation to provide timely and appropriate medical care to Dennesty Dawkins because she alone was in control of his medical treatment.

3

## III (B)

## Will Plaintiff Show a Breach of the Duty of Care by Bureau of Prisons Employees?

Plaintiff will prove that beginning in March, 2011, Dennesty Dawkins progressively lost vision in his right eye. Despite recommendations by two separate eye specialists (Drs. Goodman and Hammer) in January 2012 that the cataract be surgically removed, neither Dr. Gross (the BOP physician) nor anyone else at FCI Lompoc made the necessary arrangements for the simple cataract removal surgery required. Dennesty was transferred from FCI Lompoc to FCI Terminal Island on 30 April 2012. Plaintiff will prove that on 7 May 2012, Dr. Castro-Greenspan examined Dennesty Dawkins. She learned that he had suffered from uveitis, an inflammatory eye disease; that he had developed a cataract as a result of the same sarcoidosis that caused the eye inflammation that two eye specialists had recommended cataract surgery months before; and that Dennesty Dawkins could no longer perceive anything but light through his right eye.

Instead of arranging for prompt surgery, as had been prescribed five months before, Dr. Castro-Greenspan referred Mr. Dawkins for an examination by yet another ophthalmologist, Dr. Carson. After Dr. Carson verified that the loss of vision was not the result of a retinal problem, he then became the third eye specialist who prescribed cataract surgery/ Dr. Castro-Greenspan received his report in late May.

Instead of scheduling a cataract surgery forthwith, she then claims she arranged for a fourth examination by yet another ophthalmologist. She made no efforts to speak with any of the eye specialists. She made no attempt to expedite the consultation or surgery. She did nothing to remove the cataract. A scheduler set the appointment for July, but when the ophthalmologist failed to appear at Terminal Island on that date, Dennesty's appointment was postponed until September 21, 2012.

/ / /

/ / /

4

### III (C)
### Did the Breach of the Duty of Care Cause Damage?

Plaintiff will show the failure to timely treat the cataract and the underlying predisposition to inflammatory disease process of the eye behind the cataract (which made it difficult or impossible to examine the underlying structures for any recurrence of uvietis) was the cause of Dennesty's permanent right eye blindness. The evidence will demonstrate that had the employees of the defendant United States timely insured that the uvietis was monitored and controlled and the cataract removed, Dennesty would have retained his eyesight. Instead, despite Dennesty Dawkin's increasing desperation, the BOP employees, Gross, Castro, Linsteadt and others, essentially did nothing. When Dennesty Dawkins finally saw Dr. Miller on 21 September 2012, Dr. Miller made the finding Dennesty was now permanently blind in his right eye.

### III (D)
### What Damages Can Plaintiff Show As A Result of the Loss of Visions In His Right Eye?

Dennesty Dawkins will prove that the injuries he sustained caused both non-economic and economic damage to him. The loss of vision caused him panic, fear, and depression as he waited for treatment that never came, as his vision deteriorated over the year and a half from 20/20 to 20/200, 20/400, 20/800, then to light perception only, and finally to complete blindness . He suffers daily from loss of depth perception, diminution of hand-eye coordination, fatigue in the good eye, difficulty driving at night, and self-consciousness about his appearance.

Dennesty has lost the future earning capacity; money he otherwise could have been able to earn. Due to the need for future medical care and loss of future earnings over a work lifetime, Dennesty Dawkins has suffered almost $300,000 in economic damages. He was offered a job earning $16.50 an hour – an offer that was withdrawn because of his blind right eye. Instead, he earns less than $10.00 an hour working at a

restaurant.

Plaintiff will establish damages by proof of the reasonable amount of expected future income, the reasonable likelihood of his loss of such because of his blindness and the causal nexus between defendant's conduct and his loss.

## IV

## Defendant's Affirmative Defenses

**1.  Comparative/Contributory Fault**

A defense of comparative or contributory fault requires that defendant establish that Plaintiff's conduct was negligent, and that Plaintiff's negligence was a substantial factor in causing the damages involved. Defendant has not identified any conduct to Plaintiff as of this date that would support such a defense.

**2.  Contributory Fault of 3rd Party for Whose Conduct Defendant is Not Legally Responsible**

In order to diminish its liability proportionally to the effect of third party negligence, defendants have the obligation to prove the elements of negligence as to that third party's conduct: a duty based on the applicable standard of care; breach; causation and damages. In this matter, defendants may seek to limit their liability by alleging that their third party contractors (Drs. Hammer, Goodman, and Carson) were negligent. Since all three recommended cataract surgery, which defendant never arranged, it is difficult to conceive that they can prove this defense, as to which defendant bears the burden.

## V

## Bifurcation of Issues

Plaintiff will not request a bifurcation of trial.

## VI

## Jury Trial

Under the Federal Tort Claims Act, trial is to the Court alone.

/ / /

# VII
## In Limine Motions

Plaintiff does not anticipate the need to file in limine motions at this time.

# VIII
## Attorneys Fees

Attorneys fees in FTCA cases are paid from the judgment amount, and are statutorily limited to no more than 25% of the recovery.

# IX
## Abandonment of Issues

Plaintiff has not abandoned any issues.

Dated: March 5, 2016

Respectfully submitted,

*/s/ Eugene G. Iredale*
EUGENE G. IREDALE
RICHARD M. BARNETT

Attorneys for Plaintiff
DENNESTY DAWKINS